In re DIMM & CO.

(District Court, D. Pennsylvania.   July 7, 1906.)

No. 729.

1. BANKRUPTCY—COMPENSATION OF TRUSTEE—SERVICES RENDERED IN SELLING PROPERTY.

A trustee in bankruptcy is entitled to an allowance in his accounts for personal services rendered by him in attending and assisting in continuous auction sales, by means of which the bankrupt's stock of goods was disposed of to the substantial advantage of the estate; and for his necessary personal expenses while so doing. He may also properly be allowed in such account for unavoidable losses of small sums to the estate through inability to collect from purchasers.

2. SAME—COUNSEL FEES.

While the fact that an attorney had acted for a bankrupt may affect the propriety of his employment to act for the trustee, it does not deprive him of the right to compensation for services rendered after he has been so employed.

In Bankruptcy. On certificate from referee sur exceptions to account of trustee.

W. L. Hoopes and Willis E. Myers, for exceptions.

J. Howard Neely, for trustee.

ARCHBALD, District Judge. Of the five exceptions originally filed to the account of the trustee, the first has been withdrawn. This covered the amount paid to Charles Stimmel for services as clerk at the daily auctions of the bankrupts' goods which were held 18 days, at $3 a day, $54. By consent of the trustee, also, the third and fourth exceptions are sustained; the one being for $5 for attending upon a rule to show cause and making answer thereto, and the other being for $20, the alleged expense of procuring a bond, both of which accordingly go out. But two exceptions therefore remain, the first of which is directed to a claim of $90, made by the trustee for expenditures, personal and otherwise, incurred in attending and conducting the sale of the bankrupts' stock, and for personal services rendered in connection therewith, and also for a loss on the sales as returned, due to the inability to collect from certain purchasers. The bankrupts were country merchants, and it was deemed advisable to dispose of the merchandise which they carried, not in a single lumping sale, but piece by piece, in continuous daily auctions. No one questions the propriety or advantage of this course, and by it some $2,242.29 were realized, which is said to be double what would have been secured in any other way. To accomplish this the trustee had to be on hand every day, through a period of nearly three weeks, cleaning and arranging the goods, and looking after sales, during which time he incurred personal expenses by reason of being away from home to the amount of $9. There were other minor expenditures directly connected with the auction, amounting to $5.40 more. A claim of $17.39 is made for losses on reported sales, and $54 is asked for the daily attendance and services of the trustee. The aggregate is $85.79; the balance of the $90 for which credit is asked being made up of affidavit fees, etc., which the trustee is only able to estimate, and of which he kept no direct account.

The services of the trustee were well worth the amount asked, and should be allowed. Some of them were of almost a menial character, made necessary by the condition in which the goods were found; and there can be no question as to the advantage of the course pursued in disposing of them, to which the attendance of the trustee was necessary and materially contributed. The bankruptcy act expressly authorizes the business of bankrupts to be continued for a limited period by the trustee when deemed advisable, and the allowance of additional compensation for such services to that which is otherwise provided. Section 2 (5). And while the daily auction sales in the present instance may not exactly have been a continuance of the business of the store, they were so in effect, fulfilling the spirit, if not the letter, of the law.

The losses on sales are also a legitimate subject of credit. The trustee might well have deducted them from his totals, and only returned the net amount; and had he done this, it probably would never have been questioned. In fact, the only point made is that he did not take this course. It may be that, with more circumspection, the purchasers who got away without paying, or claimed that they did not get the goods struck off to them, would not have been able to successfully make these pleas. But treating the losses as unavoidable, as seems to be conceded, the trustee is entitled to a credit therefor.

The other items which make up the $90 are not seriously questioned. Some three or four dollars are not in strictness accounted for. But it may well be that they have gone in the way suggested by the trustee, and they are not of sufficient moment to stop over.

The only other objection is to the item of $75, counsel fees. It is contended that Mr. Neely was the bankrupts' attorney, and therefore not entitled to them. But this, if true—and it is disputed—however it might affect the propriety of appointing him to act for the trustee, would not deprive him of compensation after his services were rendered. Considerable, however, has already gone in one way and another to counsel, in view of which the present allowance will be confined to $50. This, so far as appears, will fairly cover what has been done.

With this modification, the exceptions are overruled, and the account of the referee is confirmed.